Luciano S. SOTO, d/b/a L.S. Soto
Customs Broker, Appellant,

v.

SEA–ROAD INTERNATIONAL,
INC., Appellee.

No. 13–95–177–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 13, 1997.

Rehearing Overruled March 13, 1997.

Bobby D. Myers, Biery, Biery, Myers & Armstrong, San Antonio, for Appellant.

Herbert Gee, Houston, George C. Shoemaker, Jr., Law Offices of Harry Gee, Jr., Houston, Stephen Leonard Miller, Law Office of Harry Gee, Houston, for Appellee.

Before DORSEY, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Luciano S. Soto, defendant below, appeals from an adverse judgment in a suit brought by Sea–Road International, Inc ("Sea–Road"). Sea–Road, a transportation service company, sued Soto for conversion resulting from a breach of implied contract for bailment. Following a bench trial, the court rendered judgment for Sea–Road and ordered that it recover $85,000 in damages with prejudgment interest and costs. By seven points of error, Soto challenges the legal and factual sufficiency of the trial court's findings of fact and conclusions of law. We affirm.

## BACKGROUND

This lawsuit arises from the sale of 100,500 yards of fabric by Dae Uk Trading Co., Ltd., a South Korean company, to The Textile Corporation ("Textile"). Textile never received the fabric and Dae Uk was never paid. Result: Dae Uk sued its shipping/transportation provider, Sea–Road International, forcing it to pay back 70% of the freight's value ($82,750 plus attorney's fees and interest). Sea–Road, in turn, sought restitution from Soto, the customs agent working on behalf of Textile.[1]

The fabric was first transported from Seoul to Los Angeles pursuant to a "Combined Transport Bill of Lading" issued by Sea–Road to Dae Uk Trading. According to the bill of lading, the fabric was consigned to the order of The Textile Corporation. The fabric was accepted in Los Angeles by Sea–Road International, Inc., the "stateside" transportation service company, which then arranged, at the oral request of Textile, to forward the fabric to Luciano Soto's warehouse in Brownsville, Texas. The fabric was transported to Soto pursuant to a "Delivery Order" indicating that the shipment of goods was from Sea–Road to Soto "C/O SEA ROAD INTL/TEXTILE CORP." The order instructed the destination warehouse (Soto) as follows: "YOU MUST CHECK WITH SEA ROAD INT'L BEFORE RELEASING ANY MERCHANDISE." Both parties acknowledge that the fabric was received and stored by Soto. The parties also agree that Soto subsequently released the fabric to a third party trucking company without first notifying Sea–Road. After its release, the fabric disappeared.

The dispute focused on the storage and release of the fabric while in Soto's possession. K.W. Kim, Sea–Road's general manager, testified that Sea–Road had not released the cargo to Soto, but rather, had merely transferred it to Soto's warehouse for storage. This transfer was documented in the delivery order that specifically required Soto to notify Sea–Road before releasing the fabric. Kim conceded that they transferred the cargo without first receiving the bill of lading, which would have been the preferred document by which to transfer possession of the fabric, but since Textile wanted the fabric stored at Soto's warehouse, the release restrictions were put on the delivery order as a "guarantee to [them that] the cargo [would] remain at the warehouse of L.S. Soto." After the fabric had been stored with Soto for

---

1. The normal procedures for shipping goods to the U.S. from a foreign point of origin are as follows: First, the seller and buyer make a financial arrangement for the cargo. The seller sends a shipping request to the transportation company. After receiving the merchandise, the transportation company releases the bill of lading and guarantees transportation to the seller. After the bill of lading is issued, the transportation company decides on the method of transportation (land, sea, or air) and transports the cargo.

In the meantime, the seller sends the bill of lading to a bank. The bank, in turn, notifies the buyer who then pays for the merchandise in exchange for the bill of lading. The buyer then sends the bill of lading to the transportation company along with a request for release. The transportation company sends a cargo release order to the destination warehouse who then surrenders the cargo to the buyer. Finally, the bank completes the transaction by sending the money to the seller.

three months, Sea–Road sent Soto an inventory request to which Soto did not respond. Five months later, Sea–Road sent letters and faxes to Soto inquiring about the fabric and demanding entry into Soto's warehouse to inventory the cargo. Sea–Road later learned that Soto had released the goods to Textile but that Textile never received them.

Soto acknowledges that the goods were received by Santiago Trevino, his employee and attorney-in-fact. He also confirms that Trevino signed the delivery order executed by Sea–Road and initialed by the special instructions on the order. Nevertheless, he testified that he did not have to notify Sea–Road or get its release before surrendering the goods because the instructions merely said to "check with Sea–Road." Soto testified that after the goods arrived at his warehouse, he presented them to customs under an immediate export document and then released the goods to Armando Mireles. Soto testified that he did not know who Mireles worked for but that he could only assume that either Sea–Road or Textile instructed him to release the goods to Mireles. He conceded that he had never received any documentation by way of a power of attorney or representation letter showing that Mireles was Textile's agent, but that, with respect to "the goods," "[w]ho they went to or who they belonged to was not [his] concern."

In finding for Sea–Road, the trial court made the following findings of fact:

1. Plaintiff, Sea–Road International, Inc., delivered certain property (the "Goods") that are the subject of this suit to the warehouse of Defendant, Luciano S. Soto, doing business as L.S. Soto Customs Broker, (the "Defendant") in Brownsville, Texas on October 14, 1988.

2. Defendant's employee signed the Delivery Order covering and pertaining to the Goods and assumed possession of the Goods. The Delivery Order signed by Defendant's employee contained the following instruction:

TO: DESTINATION WAREHOUSE. YOU MUST CHECK WITH SEA ROAD INTERNATIONAL BEFORE RELEASING ANY MERCHANDISE 370 S. CRENSHAW BLVD. # E–205 TORRANCE, CA 90503 SOPHIA SONG–YANG.

3. Defendant knowingly and voluntarily accepted delivery and assumed possession of the Goods subject to Plaintiff's instructions as shown on Plaintiffs Delivery Order.

4. Plaintiff Sea–Road International, Inc. delivered the Goods to Defendant's warehouse with the intention and expectation that Defendant would not release the Goods without its authorization as per instructions at the time of delivery to Defendant's warehouse.

5. After accepting the Goods, Defendant assumed possession, dominion and control of the goods thereby creating a contract of bailment, and Defendant subsequently converted the Goods to his own use & purpose by delivering the Goods to a third party without prior notice to Plaintiff and without Plaintiff's authorization and consent.

6. Defendant has failed to return the Goods. to Plaintiff upon Plaintiff's demand for return of said Goods.

7. Plaintiff did not discover and could not reasonably have discovered that Defendant had released the Goods to said third party, without its authorization, until May 11, 1989 [seven months after delivery to Defendant].

8. Defendant's actions were the proximate cause of Plaintiff's actual damages of $85,000, which is the sum of money the Plaintiff had to pay to the owner of the Goods as compensation for the loss of the Goods.

The trial court's conclusions of law are as follows.

1. Defendant, LUCIANO S. SOTO, doing business as L.S. SOTO CUSTOMS BROKER, wrongfully breached its contract of bailment with Plaintiff and has wrongfully converted Plaintiff's property to its own use and purpose;

2. Plaintiff, SEA–ROAD INTERNATIONAL, INC. shall have and recover from Defendant, LUCIANO S. SOTO, as damages for said wrongful breach of its contract of bailment and conversion

of Plaintiff's property, the sum of $85,-000 in U.S. Dollars, together with pre-judgment interest at the rate of ten (10) percent per annum from and ... after June 23, 1989, until the date preceding the entry of Final Judgment;

3. Plaintiff shall recover from Defendant all costs of Court;

4. Plaintiff, SEA–ROAD INTERNATIONAL, INC. shall also have and recover from Defendant, LUCIANO S. SOTO, Post-judgment interest at the rate of ten (10) percent per annum, compounded annually, on the total above amounts from the date of entry of Final Judgment until fully satisfied.

Soto challenges the legal and factual sufficiency of the courts findings of fact by arguing that (1) he did not and could not have converted the property; (2) he was not a bailee as defined under Article 7 of the Uniform Commercial Code; (3) damages were inappropriately awarded because (a) there was no evidence or insufficient evidence of the market value of the goods at the time and place of conversion and (b) the award does not conform to the pleadings; (4) prejudgment interest was inappropriate because there was no evidence or insufficient evidence to show the date of Sea–Road's loss; and (5) the trial court erred in finding that Sea–Road did not discover and could not have discovered the release of the goods until May 11, 1989, thus Sea–Road's claim should have been barred by limitations.

## STANDARD OF REVIEW

■ Findings of fact entered in a case tried to the bench are of the same force and dignity as a jury's verdict upon special questions. *Guerra v. Garza,* 865 S.W.2d 573, 575 (Tex.App.—Corpus Christi 1993, writ dism'd w.o.j.) (*citing City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.)). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards as are applied in reviewing the legal and factual sufficiency of the evidence

supporting a jury's answer to a special question. *Guerra,* 865 S.W.2d at 575.

When reviewing a legal insufficiency point of error, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding and disregard any evidence and inferences to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988). Under such a point, we are limited to reviewing only the evidence that tends to support the finding. *Id.* If there is any evidence of probative force, that is, more than a scintilla of evidence that supports the finding, we must overrule the point, and uphold the finding. *Id.*

When reviewing a factual insufficiency point, we examine all of the evidence, both the evidence that supports the finding and the evidence that controverts the finding. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *Otis Elevator Co. v. Joseph,* 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ). Under this type of point, we can set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

## DISCUSSION

A review of the record reveals that (1) the trial court properly identified Soto as a bailee and that in that capacity Soto converted Sea–Road's property, (2) the evidence was legally and factually sufficient to support the court's finding of damages and prejudgment interest, and (3) the evidence was legally and factually sufficient to support the court's finding regarding the date Sea–Road discovered the loss.

### A. Bailment

Soto contends that several factors weigh against the court's finding of a bailment contract. First, he argues that since he and Sea–Road had no communications concerning the shipment, there can be no implied contract of bailment. Citing a case out of the Washington Supreme Court,[2] Soto argues

2. *Schmiegelow v. Ocean Brokerage Co.,* 115 Wash. 289, 197 P. 323 (1921).

that he never gave Sea–Road any indiction that he would act on its behalf, and thus, no contract of bailment was created. Second, he argues that his duties ran only to the buyer, Textile, the named consignee on the bill of lading. Thus, as customs broker working on behalf of Textile, he had no contractual relationship or duty to Sea–Road.

■ The basic elements of bailment are: (1) the delivery of personal property by one person to another in trust for a specific purpose; (2) acceptance of such delivery; (3) an express or implied contract that the trust will be carried out; and (4) an understanding under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs. *Yoakum Grain, Inc. v. Energy Indus., Inc.*, 511 S.W.2d 95, 98 (Tex.Civ.App.—Corpus Christi 1974, no writ); 8A TEX. JUR.3D *Bailments* § 3 (1995). Soto contests only the third element requiring the formation of a contract.

■ A bailment contract may arise by implication of law if through the proof of sufficient circumstances the implied relationship of bailor and bailee is shown to rest upon substantive foundation. *Sanroc Co. Int'l v. Roadrunner Transp., Inc.*, 596 S.W.2d 320, 322 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ); *Rust v. Shamrock Oil & Gas Corp.*, 228 S.W.2d 934, 936 (Tex.Civ.App.—Amarillo 1950, no writ).

■ Here, Sea–Road presented evidence that it transferred the fabric to Soto's warehouse for customs clearance and storage with specific instructions concerning the cargo's release. Sea–Road also presented evidence that Soto's agent received and signed for the delivery and initialed by the special instructions showing an understanding of Sea–Road's directions. Soto's argument that he is not bound because he had no formal contact with Sea–Road is unpersuasive. Formal communication and negotiation was not necessary. Both Sea–Road's and Soto's experts in customs house brokerage testified that instructions on delivery orders are understood by the industry as obligatory and are usually adhered to when cargo arrives at their facilities. By signing and initialing the delivery order, Soto expressly indicated that

he could accept the goods under the conditions attached and in that regard, that the trust or specific purpose of the agreement would be carried out. We conclude that there was legally and factually sufficient evidence of a bailment contract. We overrule Soto's third point of error.

## B. Conversion

■ Conversion is any distinct act of dominion wrongfully exerted over another person's personal property in denial of, or inconsistent with, that other person's right in the property, either permanently or for indefinite time. *Dolenz v. National Bank of Texas at Fort Worth*, 649 S.W.2d 368, 370 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). The failure to return bailment property at the end of the bailment period constitutes, in law, a conversion of the bailment entitling the bailor to recover its value. *Kirkland v. Mission Pipe & Supply Co.*, 182 S.W.2d 854, 855 (Tex.Civ.App.—Austin 1944, writ ref'd w.o.m.). A plaintiff must prove that at the time of the conversion, he or she was the owner of the property, had legal possession of it, or was entitled to possession. *Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex.App.—El Paso 1993, no writ). Thus, conversion can take place even when the person in possession does not have title to property, so long as he has a right of possession. *Christian v. First Nat'l Bank of Weatherford*, 531 S.W.2d 832, 841 (Tex.Civ. App.—Fort Worth 1975, writ ref'd n.r.e.).

■ Soto's principle arguments here concern possession—Sea-Road's right to possession and the surrender of that possession. Soto first argues that there was no conversion because Sea–Road was neither the owner of the goods nor entitled to possession of the goods after it surrendered possession of the goods to Border To Border Trucking Company for delivery to Soto. He contends that once the seller, Dae Uk *vis-a-vis* Sea–Road, delivered the goods to Border To Border, Sea–Road no longer had a right to control possession because title passed to Textile, the named consignee on the bill of lading. *Adkins–Polk Co. v. John Barkley & Co.*, 297 S.W. 757 (Tex. Civ.App.—El Paso 1927, writ dism'd)(delivery of the goods to

the carrier by the seller is delivery to the buyer).

Soto's argument, however, does not apply to international documentary sales transactions. Under the terms of an international documentary sales transaction involving a bill of lading contract, a carrier such as Sea-Road, in return for payment of freight charges, will promise to deliver the goods in one of two ways depending upon the type of bill of lading: (1) directly to the named consignee when under a "straight" (non-negotiable) bill of lading, or (2) to the person in possession of an "order" bill of lading (i.e., the holder of a negotiable bill of lading). When a negotiable bill of lading is used in international documentary sales transactions (also known as letter of credit transactions), a buyer such as Textile can obtain delivery of the goods only if it has physical possession of the original bill of lading. The bill of lading is thus a document of title because it controls access to and delivery of the goods. Dae Uk Trading is assured payment by a promise, in the form of a letter of credit, from a bank to pay Dae Uk the amount of the purchase price, and the bank's promise is conditioned upon Dae Uk presenting evidence that the goods have been shipped, via Sea-Road, to Textile's port or destination. The bill of lading is evidence that Dae Uk has shipped the goods. After the bank has paid Dae Uk and in return received the bill of lading, the bank can obtain payment from Textile. Only when Textile pays the bank does it obtain the bill of lading and, consequently, title to the goods.

In the present case, Textile never paid Dae Uk (via the bank) and therefore never obtained legal title to the goods. The bank eventually returned the bill of lading to Dae Uk, again making Dae Uk the legal owner of the goods; Textile was never the legal owner. Therefore, unlike a "straight" bill of lading transaction where delivery is made and ownership is conferred when the seller transfers possession to the carrier, here delivery was never made because title at all times remained with the holders of the negotiable bill of lading—Dae Uk and the bank. Consequently, while Sea-Road never had title to the goods, at all times once it received the goods from Dae Uk, it had a superior right to possess and control the goods as intended by the bill of lading and thus satisfied the "possession" element of conversion.

■ Soto further contends that Sea-Road surrendered its right to possession by using the wrong transferring documents. He argues that (1) the delivery order used by Sea-Road cannot be used as a negotiable instrument to control possession of the goods; (2) the delivery order is actually a non-negotiable bill of lading naming the buyer as consignee which, according to section 2.505(a)(2) of the Texas Business and Commerce Code, reserves no security interest, even though the seller retains possession of the bill of lading; and (3) according to Comment 4 to section 2.505, the seller loses control of the shipment where it is by a non-negotiable bill of lading taken to the buyer.

Comment 3 to section 7.102 of the Uniform Commercial Code provides that "Prior to [the acceptance of delivery order by a bailee], there is no basis for imposing obligations on the bailee other than the ordinary obligations of contract ...," but "when a delivery order has been accepted by the bailee it is for practical purposes indistinguishable from a warehouse receipt," which is a document of title[3] issued by a person in the business of storing goods for hire. TEX. BUS. & COM.CODE ANN. §§ 1.201, 7.102 cmt. 3 (Tex.UCC)(Vernon 1991). Thus, Soto's argument that Sea-Road's delivery order was not binding on him would have been correct had he not accepted the delivery order. Since he accepted the shipment and the delivery order, the order is "for all practical purposes" a document of title which required Soto to act as a ware-

---

3. "Document of title" includes, ... warehouse receipt or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers. To be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass.
TEX. BUS. & COM.CODE ANN. § 1.201(15) (Vernon 1994).

houseman. TEX. BUS. & COM.CODE ANN. § 7.102 cmt. 3 (Tex. UCC)(Vernon 1991). This deduction, by implication, negates Soto's other argument that he was acting only as a customs broker, and not a warehouseman, as well as his argument that the delivery order was a non-negotiable bill of lading that reserved no security interest. Soto assumed the responsibilities and obligations of a person in the business of storing goods for hire by accepting a delivery order, which for all practical purposes, was a document of title issued to a bailee.

■ Finally Soto contends, in the alternative, that even if he was acting as a warehouseman, he diligently performed his duties by delivering the goods in the manner directed by his customer, Textile. According to other customs experts that testified, however, the reasonable commercial standard was to follow the instructions on delivery orders.

Sea–Road presented sufficient evidence to show that Soto, as bailee, delivered Sea–Road's property to a third party without prior notice to Sea–Road and without Sea–Road's authorization. Sea–Road made a demand for the goods and Soto could not return the goods. Insofar as sections 7.403(a) and (d) provide that "The bailee must deliver the goods to a person entitled under the document," meaning "the holder in the case of a negotiable document, or the person to whom delivery is to be made ... under a non-negotiable document," (TEX. BUS. & COM. CODE ANN. § 7.403 (Tex. UCC)(Vernon 1991)), Soto breached his duty as a bailee, and in that regard, converted Sea–Road's goods by exercising dominion and control over Sea–Road's property in such a way that was inconsistent with Sea–Road's right in the property. *See Dolenz,* 649 S.W.2d at 370; *Kirkland,* 182 S.W.2d at 855. We overrule Soto's first and second points of error.

## C. Damages

By his fourth point of error, Soto challenges the legal and factual sufficiency of the evidence to support finding of fact No. 8 on damages. He contends that Sea–Road presented no evidence of the market value of the goods at the time and place of conversion. Alternatively, he argues, because Sea–Road

proved its damages as the amount of money paid to Dae Uk, 70% of the market value, rather than market value itself, Sea–Road presented factually insufficient evidence of damages.

■ Generally, damages are the value of the property at the time of a conversion together with legal interest thereon. *Imperial Sugar Co. v. Torrans,* 604 S.W.2d 73, 74 (Tex.1980). Damages may also include, however, other losses or expenses necessary to compensate the plaintiff for all actual losses or injuries sustained, not merely the reasonable market value of the property, as a natural and proximate result of the defendant's wrong. *Multi–Moto Corp. v. ITT Commercial Fin. Corp.,* 806 S.W.2d 560, 566 (Tex. App.—Dallas 1990, writ denied); *First Nat. Bank of Missouri City v. Gittelman,* 788 S.W.2d 165, 168–69 (Tex.App.—Houston. [14th. Dist.] 1990, writ denied); *Virgil T. Walker Constr. Co. v. Flores,* 710 S.W.2d 159, 161 (Tex.App.—Corpus Christi 1986, no writ); *Groves v. Hanks,* 546 S.W.2d 638, 647 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

■ As evidence, Sea–Road presented the sales contract between Dae Uk and Textile which showed the price of the goods to be $101,500.00. Two U.S. Customs forms prepared by Soto and dated in October, the month that Soto received the goods, showed the same value. Soto presented no contrary evidence challenging Sea–Road's evidence of value of the goods. Sea–Road also established that as a consequence of the conversion, Sea–Road was sued by Dae Uk and was forced to pay Dae Uk seventy percent of the value of the cargo, plus attorney's fees and interest for a total of $82,750.

After considering all of the evidence, we do not find that the evidence standing alone is too weak to support the finding that Sea–Road suffered actual damages in the amount of $85,000. We also do not find that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. Here the trial court, even with evidence of the fair market value of the goods, properly put Sea–Road in the position it would have been in had Soto

not converted the property. If Sea–Road had been awarded the full $110,500, it would be making an unjust profit from the conversion. Soto does not do himself any favor by arguing for market value damages. In any event, we hold that the evidence is factually sufficient to support the trial court's finding and overrule Soto's fourth point of error.

We also disagree with Soto's fifth point of error arguing that the damages do not conform to the pleadings. Sea–Road's pleadings sought the fair market value of the property, exemplary damages, interest, and such other relief to which it may be justly entitled.

As a general rule, the judgment of the court must conform with the pleadings made by a party. TEX.R. CIV. P. 301. However, in determining whether the judgment conforms with the pleadings, an appellate court should view the pleadings as a whole. *Khalaf v. Williams*, 814 S.W.2d 854, 858 (Tex.App.—Houston [1st Dist.] 1991, no writ). A prayer for general relief will support any relief raised by the evidence so long as it is consistent with the allegations in the petition. *Id.*

Here, given the evidence presented, the award of $85,000 is not at odds with the relief sought in Sea–Road's original petition.

Finally, by his sixth point of error, Soto challenges the trial court's award of prejudgment interest. He argues that Sea–Road failed to present evidence of the date of loss from which to calculate interest.

"Prejudgment interest is recoverable as a matter of right when an ascertainable sum of money is determined to have been due and payable at a definite date prior to judgment." *Miner–Dederick Const. Corp. v. Mid–County Rental Serv., Inc.*, 603 S.W.2d 193, 200 (Tex. 1980). The evidence did not definitively establish the date that Soto released the property to a third party. It did establish, however, the date the property was received by Soto and the date Sea–Road asked Soto to return the property but could not.

Sea–Road presented evidence that the loss occurred sometime between October 14, 1988, when the goods were delivered, and June 23, 1989, the date upon which Sea–Road's counsel demanded that Soto provide Sea–Road with an inventory of the goods, information regarding the release of the goods, and $105,500. The trial court fixed prejudgment interest from June 23, 1989, the latest date on which the loss could have occurred. Since the loss could not have occurred prior to the date that the goods were delivered or later than the date that Soto could not return the goods, and since we have concluded that the goods were in fact converted, Soto is not harmed by the trial court's finding. The evidence was legally and factually sufficient to support the trial court's finding.

## D. Limitations

This case went to trial in 1994, but only after the suit had been filed and dismissed three times. Nothing in the record clearly indicates the date when the original suit was filed. The lone reference is a single statement by defense counsel that the case "was originally filed in 1990." In 1991, both sides entered into a "Waiver of Limitations Defense" agreement because the second suit would be filed outside of limitations. The second suit was filed under a different cause number and set for trial, but it was postponed due to defense counsel's illness. The trial court subsequently dismissed the case for want of prosecution. Sea–Road's motion to reinstate was granted but the trial court failed to sign the order. The case was consequently dismissed again for want of prosecution. Finally in 1993, the present suit was filed to which Soto answered by asserting a limitations defense.

The record shows that two limitations points were argued during trial. One point concerned the date upon which Sea–Road should have known about its loss, thus starting the limitations clock. The second concerned the validity of the "waiver of limitations defense" agreement between the parties following the dismissal and refiling of the suit in 1991. On appeal, however, Soto only complains about the date upon which Sea–Road should have known about the loss, thus starting the statute of limitations. Soto has therefore waived any com-

plaints concerning the validity of the waiver agreement.

In that regard, the precise content of his point of error is as follows:

The trial court erred in making finding of fact No. 7 because there was insufficient evidence to support the finding of fact No. 7, that plaintiff did not discover, and could not have reasonably discovered that Soto had released the goods until May 11, 1989.

Soto argues that Sea–Road discovered its loss long before May 11, 1989. The implication is that given the date that he believes Sea–Road should have been aware of its loss and the date that it filed its original suit, limitations had run on Sea–Road's cause of action. However, there is nothing in the record indicating the exact date that the original suit was filed. Soto's brief does not delineate the significance of May 11, 1989, and there is no way for us two count two years back from the date of the original filing and compare that date with May 11, 1989. Thus, Soto has also failed to present a sufficient record to show error requiring reversal on his point of error. TEX.R.APP. P. 50(d); *Pope v. Stephenson,* 787 S.W.2d 953, 954 (Tex.1990) We overrule Soto's seventh point of error.

Having overruled Soto's seven points of error, the trial court's judgment is AFFIRMED.