**VALLEY SHAMROCK, INC., Diamond Shamrock Refining and Marketing Company, and Mary Lou Nieto, Appellants,**

v.

**Francisca VASQUEZ, et al., Appellees.**

**No. 13–97–370–CV.**

Court of Appeals of Texas, Corpus Christi.

June 24, 1999.

Jaime Saenz, Rodriguez, Colvin & Chaney, Brownsville, Harold Robert Loftin, Attorney at Law, Jess M Irwin, Aldean E. Kainz, Small, Craig & Werkenthin, P.C., Attorneys at Law, Austin, for Appellant.

Ernesto Gamez, Jr., Law Offices of Ernesto Gamez, Jr., Brownsville, Larry Zinn, Attorneys at Law, San Antonio, for Appellee.

Before Justices DORSEY, YAÑEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice YAÑEZ.

Following a fight at a Valley Shamrock convenience store, Francisco Mejia was shot and killed by Tirso and Raul Huerta. Appellees, Mejia's parents and his estate,

sued appellants, premises owner Valley Shamrock, store manager Mary Lou Nieto, and Diamond Shamrock Refining and Marketing Company (Diamond Shamrock), for negligence related to Mejia's death. After a bench trial, the district judge found the appellants negligent[1] and awarded appellees $437,866.15 in actual damages and an additional $200,000 in punitive damages. We reverse and render judgment that appellees take nothing.

Appellants claim the trial court erred in rendering judgment against them because they did not owe Mejia a legal duty, did not act negligently, and did not proximately cause Mejia's death. Appellants further contend that the evidence does not support the award of either actual or punitive damages, that the suit as to Valley Shamrock was barred by limitations, and that the trial court erred in rendering judgment against Nieto individually. The question of legal duty is dispositive and, therefore, we address only this issue as to each of the appellants.

After dark on the night of November 22, 1993, Mejia went to a Valley Shamrock convenience store on the corner of International Boulevard and Van Buren Street in Brownsville and purchased beer. Mejia lived across the street from the Valley Shamrock, near the corner of Van Buren and 17th Streets with a relative, Delia Garcia. Tirso Huerta was also at the store that night. Huerta sat in his blue truck waiting for his friend, Tony Garcia, who had gone inside the store to purchase beer. A Valley Shamrock employee, Ismael Barron, and Huerta engaged in some banter and exchanged insults. Huerta testified that Barron was sweeping and wearing a red shirt typically worn by Valley Shamrock employees. Barron denied that he was on duty on that night, claiming that he was there strictly for personal reasons.

According to Huerta, when Mejia and his friend, Jaime Sanchez, exited the store,

Barron "instigated" them against Huerta. Huerta also claimed that while on Valley Shamrock's premises, Barron, Mejia, and Sanchez threw rocks and bottles at Huerta's truck. Barron denied throwing anything at Huerta's truck. Mejia and Sanchez left the premises on foot and Huerta left in his truck.

The parties were out of Barron's sight when he heard the sound of shattering glass. Barron headed toward the sound, which came from behind the store, and saw Mejia and Sanchez across the street and Huerta's truck driving away on Van Buren Street. Barron crossed the street to where Mejia and Sanchez were standing. In a conversation that took place off of Valley Shamrock premises, Mejia and Sanchez told Barron that the driver of the blue truck tried to run over them as they crossed the street and that the driver had threatened to "come back and kill them." Mejia threw a bottle at Huerta's truck and broke a window, although it is not clear whether this happened before or after Huerta attempted to run him down. Barron testified that either Mejia or Sanchez told him to call the police, and that he said he would talk to the store's assistant manager, Juan Rosas, about it. Mejia and Sanchez told Barron they were going home.

Barron returned to the store where he told Rosas about the altercation, stating that the fight did not occur on the premises and that the parties involved had left the premises. Rosas declined to call the police. Barron, too, opted not to call the police, and left the store. Two public telephones were in the Valley Shamrock parking lot, and there was testimony that Mejia had used these telephones on other occasions.

Tirso Huerta testified that after the initial altercation, he returned home, dropped off Tony Garcia, and picked up his brother,

1. The Court found Mejia twenty percent responsible for his own death; Valley Shamrock, seventy percent responsible; Diamond Shamrock, nine percent responsible; and Nieto, one percent responsible.

Raul Huerta. Approximately fifteen minutes later, the Huertas drove by the Valley Shamrock but, according to Tirso Huerta, did not enter the premises. Tirso Huerta testified that his brother shot Mejia in front of a residence on Van Buren Street which was located twenty to thirty yards away from the Valley Shamrock.

Delia Garcia testified that at about 11:30 p.m., she was inside her house across the street from the Valley Shamrock, dozing in her bedroom when she heard a loud noise, like a gunshot. Looking out the window, Garcia testified she saw Mejia coming from behind a trash bin located in the Valley Shamrock parking lot, "jumping the street," and running towards her house. According to Garcia, a car or a truck, also coming from the Valley Shamrock premises, followed Mejia. She saw nothing more because she was running to her front door. As Garcia ran, she heard some "impacts," but did not know what they were. By the time Garcia reached her front door, Mejia was on the ground in her front yard.

Mejia died shortly after midnight from injuries caused by a gunshot wound. The police found an empty bullet casing one and a half to two feet from Valley Shamrock's curb. Raul Huerta, who fired the shot that killed Mejia, pleaded guilty to murder. Tirso Huerta was also convicted of murder.

Appellees, Francisca Vasquez and Esequiel Mejia and the administrator of Mejia's estate, Delia Garcia, instituted this cause of action against appellants, alleging that their actions in refusing to call the police, in instigating the altercation preceding the shooting, and in failing to train and supervise Valley Shamrock employees constituted negligence which proximately caused Mejia's death.

In its findings of fact and conclusions of law, the trial court concluded that Valley Shamrock, Diamond Shamrock, and Nieto owed a duty to Mejia "to protect and safeguard him from threats to his life by invitees, TIRSO HUERTA, and his brother, RAUL HUERTA." The trial court also found that Diamond Shamrock owed a duty based on principles of respondeat superior and that Nieto breached a duty to train and supervise Valley Shamrock employees.

■ Appellants argue that the trial court erred in rendering judgment against them because they owed Mejia no legal duty as a matter of law and because there was no evidence of negligence. Three elements must be proven to establish liability for negligence: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Duty is the threshold question, and a plaintiff must prove the existence and violation of a duty to establish liability. *Centeq Realty v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *see Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749, 756 (Tex.1998). A duty is a legally enforceable obligation to conform to a particular standard of conduct. *Wheaton Van Lines, Inc. v. Mason,* 925 S.W.2d 722, 729 (Tex.App.—Fort Worth 1996, writ denied).

■■ Whether a duty exists in a particular case is a question of law for the court to decide from the facts surrounding the occurrence in question. *Mitchell v. Missouri—Kansas—Texas R.R.,* 786 S.W.2d 659, 662 (Tex.1990). Duty may become a question for the factfinder, but only when essential facts are disputed. *Id.* After reviewing the findings of fact for legal sufficiency, we conclude that the facts essential to the question of duty are conclusively established in this case, and therefore, duty is a question of law.

■ Landowners and occupiers of land owe varying duties of care to visitors on their land, depending upon the legal status of the visitor. *Motel 6 G.P., Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex.1996)(citing *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975)); *Silva v. Spohn Health Sys. Corp.,* 951 S.W.2d 91, 94 (Tex.

App.—Corpus Christi 1997), *writ denied,* 960 S.W.2d 654, 654 (Tex.1997). An invitee is a person who enters the premises of another at the express or implied invitation of the owner or occupant for their mutual advantage. *Rosas,* 518 S.W.2d at 536. A premises owner or occupier owes to invitees a duty to use reasonable care to protect them from foreseeable injuries. *Boyer v. Scruggs,* 806 S.W.2d 941, 944–45 (Tex.App.—Corpus Christi 1991, no writ). Thus, a landowner has a duty to prevent injuries to invitees if it reasonably appears, or should appear, that they may be injured. *Gonzalez v. South Dallas Club,* 951 S.W.2d 72, 75 (Tex.App.—Corpus Christi 1997, no writ).

 While generally applicable to the issue of proximate cause rather than duty, the criminal conduct of a third party is usually considered a superseding cause which relieves a negligent actor from liability. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 549 (Tex. 1985). A landowner usually has no duty to protect invitees from the criminal acts of a third party who is not under the landowner's supervision or control. *Exxon v. Tidwell,* 867 S.W.2d 19, 21 (Tex.1993) (citing *El Chico Corp.,* 732 S.W.2d at 313). A landowner or occupier has a duty to protect invitees from third-party criminal conduct on her premises only when the risk of criminal conduct is so great that it is both unreasonable and foreseeable. *Timberwalk,* 972 S.W.2d at 756; *Plowman v. Glen Willows Apts.,* 978 S.W.2d 612, 617 (Tex. App.—Corpus Christi 1998, pet. denied)(on rehearing).

 We impose a duty on a landowner or occupier of land to protect from the criminal acts of third parties because the landowner is often in the best position to protect against this harm. *Exxon,* 867 S.W.2d at 21. The landowner has the benefit of past experience at that particular location which may be of assistance in reasonably anticipating the conduct of third persons. *Id.* Moreover, a landowner has control of her premises and possesses the power to rid a dangerous third person from her property. *Id.* For this reason, the duty to protect invitees from third-party criminal acts does not generally extend beyond the limits of the landowner's control, that is, beyond the boundaries of her premises. *Gonzalez,* 951 S.W.2d at 75 (citing *Holcomb v. Randall's Food Markets, Inc.,* 916 S.W.2d 512, 515 (Tex.App.—Houston [1st Dist.] 1996, writ denied)).

Two decisions from this Court guide us in analyzing these principles. In *Gonzalez,* 951 S.W.2d 72, a patron sued a nightclub for injuries sustained when she was hit by a pick-up truck off its premises following an altercation on the premises. The driver of the pick-up had been involved in a fight with the plaintiff earlier and participants in the fight had threatened to harm the plaintiff later that night. Nightclub employees had knowledge of the threats. At closing time, a nightclub employee escorted the plaintiff through a back door to avoid contact with those patrons making the threats. The plaintiff safely reached her car and drove away from the nightclub. Minutes after leaving, and only one mile from the nightclub's premises, the plaintiff was seriously injured by a woman who had been involved in the earlier fight. We recognized in *Gonzalez* that once the plaintiff reached the safety of her car, it was no longer foreseeable to the premises owner that she would be harmed by the criminal actions of a third party, even though the initial contact between the parties was made on its premises. *Id.* at 76. We held that the landowner had no duty to protect appellant against third-party criminal conduct occurring off its premises. *Id.*

In *Silva,* 951 S.W.2d at 96, a hospital employee was stabbed at night on the curb adjacent to the hospital as she left the premises. We declined to hold on the summary judgment record presented that the hospital had shown an absence of duty as a matter of law. *Id.* In denying the hospital's application for writ of error, the supreme court disapproved of our holding

to the extent that it implied that a landowner has control of non-owned premises merely because he owns the adjacent property. 960 S.W.2d at 654.

In support of its "no duty" argument, Valley Shamrock specifically challenges the legal sufficiency of the trial court's findings of fact. Prior to analyzing duty, we review the legal sufficiency of these findings. In performing a legal sufficiency review, we consider only evidence and inferences, when viewed in their most favorable light, which support the trial court's findings of fact, and disregard inferences to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988); *Soto v. Sea–Road Int'l,* 942 S.W.2d 67, 71 (Tex.App.—Corpus Christi 1997, writ denied). If there is more than a scintilla of evidence that supports the finding, it must be upheld. *Sherman,* 760 S.W.2d at 242; *Soto,* 942 S.W.2d at 71.

■ First, Valley Shamrock argues that there is no evidence to support the finding that Barron was on duty on the night of the shooting. The trial court could have properly inferred that Barron was in Valley Shamrock's employ on the night of the shooting based on Tirso Huerta's testimony that he saw Barron on the premises sweeping and wearing a Valley Shamrock uniform.

■ Second, Valley Shamrock challenges the trial court's finding that Huerta threatened Mejia while on its premises. The only evidence of a threat is Huerta's statement that he would come back and kill Mejia and Sanchez. This statement appears to have been made after the parties left the store and were on the street. We agree that there is no evidence that Huerta threatened Mejia on Valley Shamrock's property.

■ Third, Valley Shamrock complains of the trial court finding that Rosas told Barron not to call the police. The record reflects that Rosas told Barron that if the parties were not on the premises, they should not involve the store. The trial court could have properly inferred that given Rosas' statements, combined with his position as an assistant manager, Rosas effectively directed Barron not to call the police.

■ Next, Valley Shamrock complains that the trial court erred in finding that Mejia and Sanchez "waited on Valley Shamrock premises all the while awaiting and expecting the police and/or 911 emergency assistance." Garcia's testimony that she saw Mejia coming from the Valley Shamrock parking lot immediately after hearing the first gunshot supports an inference that Mejia returned to the convenience store, but the trial court could not infer from this testimony alone when Mejia returned, how long he had been there, or the reason he was there. The evidence does not support the inference that Mejia expected Barron to call the police and was waiting on the premises for fifteen minutes for the police to arrive. We agree that this finding is erroneous.

■ Valley Shamrock also challenges the trial court's finding that Tirso Huerta "returned to Defendants' premises and while on Defendants' premises fired at Francisco Mejia." In this finding, the trial court finds that the shooting began on the premises, but that the fatal shot was delivered off the premises. Garcia's testimony that she saw either a car or a truck chasing Mejia in Valley Shamrock's parking lot immediately after she heard a noise like a gunshot is sufficient evidence to suggest that Tirso Huerta returned to the premises. While it is not overwhelming evidence, the trial court could infer that the first shot was fired on Valley Shamrock's premises.

Valley Shamrock also contends that the trial court erred in finding that Tirso Huerta's brother, Raul Huerta, was an invitee. Because the legal relationship between Valley Shamrock and the criminal actor is not relevant to the question of Valley Shamrock's duty to Mejia, we need not address this finding.

■ Finally, Valley Shamrock attacks findings that it had notice from Barron that "a criminal act . . . was embarking on the premises which posed imminent probability of harm" to Mejia. While there is evidence that Tirso Huerta said he would come back and kill Mejia, there is no evidence as to when and where he planned to act upon this threat. Tirso Huerta drove off after making this threat. The record does not support a finding that the criminal conduct was about to take place on Valley Shamrock property.

■ We now examine the facts and circumstances in this case to determine whether the trial court properly imposed a legal duty on Valley Shamrock. When Huerta threatened Mejia's life, the parties were not on Valley Shamrock's property. While off the premises, a Valley Shamrock employee was asked to call the police and he said he would ask the manager on duty about it. The Valley Shamrock employees decided not to call the police because no one was hurt and the parties involved in the altercation had left the premises.

■ This case differs from *Gonzalez* because the record suggests that some of the criminal conduct actually occurred on Valley Shamrock's premises; there is some evidence a shot was fired in the parking lot after the parties re-entered the premises. However, the site of the criminal act is not the only factor a court considers when imposing a duty on a premises owner to protect from the harmful criminal acts of a third party. Duty is a function of interrelated factors, and foreseeability of the risk is the foremost factor. *El Chico Corp.*, 732 S.W.2d at 311 (citations omitted); *see Gonzalez*, 951 S.W.2d at 76. In this case, as in *Gonzalez*, the employees were aware that the invitees had been threatened; however, the invitees left the premises safely prior to the harmful criminal act. It is undisputed that at least fifteen minutes elapsed between the request for police and the shooting. There is no evidence that Mejia was waiting on the premises for police to arrive. There is

no evidence that Valley Shamrock employees knew that Tirso Huerta had re-entered the premises and presented a risk to Mejia. The evidence shows that the only time Raul Huerta—who actually fired the gun at Mejia—entered the Valley Shamrock premises was at the time of the shooting. Without some evidence that Valley Shamrock had notice that Tirso and Raul Huerta and Mejia had returned to the premises, the criminal conduct which followed was not foreseeable to Valley Shamrock.

The appellees' theory is that if the police had been called following the request from Mejia or Sanchez, the police would have prevented the matter from escalating. Our review of the record shows that by the time Mejia or Sanchez asked Barron to call the police, the initial altercation had ended and the parties had dispersed. Had Valley Shamrock called the police immediately following the initial altercation and the police had been in the area when the Huertas returned, the mere presence of the police may have prevented the ultimate shooting. Although this may have been the better course of action, we cannot find that it rises to a legal duty. Even though Valley Shamrock's employees knew that a threat against Mejia had been made off of its premises, its legal duty to protect Mejia ended when he left the premises safely under no imminent threat of harm. We hold that under these facts and circumstances, Valley Shamrock did not owe Mejia a duty.

We next consider whether Diamond Shamrock owed Mejia a legal duty. The record shows that Valley Shamrock and Diamond Shamrock had a contractual relationship whereby Diamond Shamrock supplied gasoline and other products to Valley Shamrock. The trial court found that Valley Shamrock was an ostensible agent of Diamond Shamrock, and therefore, Diamond Shamrock also owed Mejia a legal duty under the doctrine of respondeat superior. Because Valley Shamrock owed no duty to Mejia, it is axiomatic that a vicarious liability theory must also fail. We

hold that Diamond Shamrock did not owe Mejia a legal duty.

Finally, we turn to the issue of the store manager's legal duty. Because Valley Shamrock owed no duty to Mejia, we conclude that Nieto, as the store's representative,[2] owed no duty to Mejia.

 The trial court also found that Nieto failed to fulfill her duty to train and supervise Valley Shamrock employees concerning criminal activity on its premises. We conclude that this finding is in error. Even though the evidence showed that the store was located in a "rough" neighborhood, other than the theft of merchandise, only one other crime, an assault, had transpired on the premises prior to Mejia's shooting. There is no evidence that Nieto, who was not present on the night of the shooting, could have anticipated the shooting or the necessity to train and supervise Valley Shamrock employees in a different manner. We conclude that Nieto did not owe a duty to protect Mejia from the criminal acts of the Huertas under any theory.

We need not address the remaining issues because they are not necessary to the disposition of this case. *See* Tex.R.App. P. 47.1. The judgment of the trial court is REVERSED and judgment RENDERED that appellees take nothing.

2. Nieto complains in her brief that the trial court erred in rendering judgment against her individually. The judgment is silent as to the capacity in which she is liable. Appellees concede in their brief that they sued Nieto in her representative capacity and that the trial court did not render judgment against Nieto individually.