**INTERNATIONAL FREIGHT FORWARDING, INC.,**
Appellant,

v.

**AMERICAN FLANGE, Appellee.**

No. 04–98–00060–CV.

Court of Appeals of Texas,
San Antonio.

April 14, 1999.

Raul Casso, Wilson, Trevino, Freed, Casso & Valls, P.L.L.C., Laredo, for Appellant.

Joel H. Klein, Charles M. Jefferson, Robert E. Golden & Associates, San Antonio, for Appellee.

Before ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

American Flange ("American") brought suit against International Freight Forwarding ("IFF") for damages resulting from the failure to deliver steel plugs to its Mexican buyer, Compania Mexicana Tri–Sure, S.A. de C.V. ("Tri–Sure"). After a bench trial, the trial court found in favor of American and ordered IFF to pay $20,620.00 in damages. In addition, IFF was ordered to pay attorney's fees and court costs. IFF raises seven issues on appeal from the trial court's judgment. We affirm.

### Statement of Facts

On November 28, 1994, American shipped 130,000 steel plugs to Tri–Sure. An invoice of billing was also issued on that same date to Tri–Sure billing it $20,620.00 for the plugs. The sales price included the shipment cost, $1900.00, to transport the plugs from Illinois to Texas. The goods were transported to Laredo, Texas by DTS, a trucking company. The goods were received and signed for by IFF on December 1, 1994. As an agent of Tri–Sure, IFF's responsibility was to deliver the goods to Tri–Sure in Mexico City. The shipment in question was the fifth of seven shipments sent from American to Tri–Sure in Mexico.

Payment collection was first sought by American from Tri–Sure in March 1995. American was informed that the shipment had not been received. American contacted IFF in May 1995 to determine if the plugs had been shipped to Tri–Sure. American was informed that IFF could not verify it had the shipment because it lacked all documentation that the shipment had been received. In October 1995, American contacted IFF again. American sent IFF copies of the shipping order which documented the shipment from American by its carrier DTS.[2] A subsequent search of IFF's warehouse revealed that the plugs had been sitting in the warehouse since their arrival on December 1, 1994.

IFF contacted Tri–Sure and stated that the shipment had been found. However, Tri–Sure refused delivery. When contacted, American also refused. IFF was informed by American on January 10, 1996 that it would be re-billing IFF for the shipment. A new invoice noting IFF as purchaser of the plugs was issued by American. The invoice noted the same invoice number, invoice date, and goods description as the November 1994 invoice originally billed to Tri–Sure.

Pursuant to defendant's motion to dismiss for lack of standing, a pre-trial hearing was held regarding whether American had standing to sue. The trial court subsequently denied IFF's motion. In a trial before the court, conflicting evidence was presented on whether the plugs were received by IFF with proper documentation. The trial court held in favor of American. Findings of facts and conclusions of law were entered by the trial court. The following findings of fact, relevant to this appeal, were made by the court:

4. The bill of lading on its face states [a] strait [sic] non-negotiable bill of lading; however, the parties by custom in the trade and by previous and subsequent course of dealing between the parties, treated the bill of lading as a negotiable bill of lading, thereby creating a bailment between the parties.

8. [IFF] had in its possession all necessary documentation to transfer the goods to Tri–Sure.

17. As a result of goods remaining in Defendant's warehouse for such a long period of time, the goods were no longer functional. Consequently, Tri–Sure did

---

2. Business records of DTS contained two copies of the shipping order. The shipping order was merely a copy of the bill of lading executed by American in Illinois. Both copies were

the same, with the exception that one showed "12/1/94 Santiago" across the form. These documents conformed to the documents maintained by American in Illinois.

not desire goods that could not perform the function, for which they were created, here, Tri–Sure rejected the goods.

19. Plaintiff did not alter the original invoice regarding the subject goods. Plaintiff re-invoiced the Defendant as the responsible party to pay the value of goods.

21. The goods were valued at $20,620.00, the balance Tri–Sure had originally agreed to pay for the goods.

22. Defendant failed and refused to pay the damage sum of $20,620.00.

23. Defendant still fails and refuses to pay damages in the sum of $20,620.00.

The trial court's conclusions of law held the following:

2. Plaintiff, [American], has standing to sue Defendant, [IFF], because Plaintiff had title to the subject goods.

3. The passing of title is subject to the buyer's right to rescind. *Luce v. Crispin Co.*, et al, 344 S.W.2d 926, 933 (Tex. Civ.App.—Houston 1961)[sic].

4. Tri–Sure's refusal to receive the subject goods, revested title to Plaintiff, American, pursuant to Tex. Bus. & Com. Code Ann. § 2.401(d) (Tex.UCC) (Vernon 1994).

5. Plaintiff, [American], had title to the subject goods as a matter of law. Tex. Bus. & Com.Code Ann. § 2.401(d) (Tex. UCC) (Vernon 1994).

7. The bill of lading on its face states [a] strait [sic] non-negotiable bill of lading; however, the parties by custom in the trade and by previous and subsequent course of dealing between the parties, treated the bill of lading as a negotiable bill of lading, thereby creating a bailment between the parties.

9. The signature of Defendant's employee on the shipping slip showed acceptance of the subject goods, which, together with the parties' prior course of dealings, created a bailment between Plaintiff and Defendant.

10. The failure to return bailment property at the end of the bailment period constitutes, in law, a conversion of the bailment entitling the bailor to recover its value. *Kirkland v. Mission Pipe & Supply Co.*, 182 S.W.2d 854, 855 (Tex.Civ.App.—Austin 1944, writ ref'd n.r.e.).

11. Evidence of damages was sufficient to show failure of Defendant to deliver bailment property, constituted a conversion of the bailment, and entitles Plaintiff bailor the right to recover the value of the subject goods.

Judgment was entered in favor of American. IFF now appeals and challenges the trial court's denial of its motion to dismiss for lack of standing, and the findings entered by the court.

### Standing

Appellant, IFF, asserts that the trial court erred in denying its motion to dismiss on the basis that American lacked standing to bring suit. IFF contends that, once delivery of the plugs was made by American to DTS, title to the goods passed to Tri–Sure. According to appellant's argument, only Tri–Sure maintained standing to sue. American disagrees and asserts that the trial court's ruling was proper.

■ To establish standing, a person must demonstrate that they maintain a personal stake in the controversy at hand. *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex.1984); *Libhart v. Copeland*, 949 S.W.2d 783, 795 (Tex.App.—Waco 1997, no writ). Essentially, standing is a component of subject matter jurisdiction. *See Texas Workers' Compensation Com'n v. Garcia*, 893 S.W.2d 504, 517 (Tex.1995). Therefore, we review the issue of standing as we would review the issue of subject matter jurisdiction—de novo. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998).

■ In considering this issue, we also address appellant's third issue alleging the

trial court erred in finding that title to the plugs revested in American. American concedes that absent an agreement to the contrary, title to the plugs passed to Tri-Sure at the time American delivered the goods from Illinois. *See* TEX. BUS. & COM. CODE ANN. § 2.401(b)(1) (Vernon 1994) (stating title passes to the buyer at the time and place of shipment if a contract requires or authorizes the seller to send goods to the buyer but does not require him to deliver them to a destination); *Superior Derrick Services, Inc. v. Anderson,* 831 S.W.2d 868, 873 (Tex.App.—Houston [14th Dist.] 1992, writ denied). American, on the other hand, asserts that title revested upon Tri-Sure's rejection of the plugs. The Uniform Commercial Code, as adopted in Texas, provides that the rejection or refusal of a buyer to receive goods, whether justified or not, revests title to those goods in the seller. TEX. BUS. & COM.CODE ANN. § 2.401(d) (Vernon 1994); *see Luse v. Crispin Co.,* 344 S.W.2d 926, 933 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.). Such a revesting occurs by operation of law. *Id.*

■ In the present case, there was no evidence to suggest that American was under a contractual obligation to deliver the goods to their destination. When the plugs were placed with DTS for delivery to Laredo, title in those plugs vested with Tri-Sure. *See* TEX. BUS. & COM.CODE ANN. 2.401(c) (Vernon 1994). However, Tri-Sure refused delivery of the plugs, sight unseen, after they were located by IFF. IFF does not disagree or contest the fact that Tri-Sure refused delivery of the goods. As such, we must hold that this refusal resulted in the revesting of title in American as a matter of law, and that a sale never occurred. *See* 65 TEX. JUR. § 105 (3d. ed.1996). As the owner of the goods in question, American maintained standing. We overrule appellant's first and third issues.

## Bailment

Appellant's second and fourth issues address the trial court's findings and con-clusions of law that a bailment existed between the parties. Specifically, IFF asserts that the trial court erred in finding that "the parties by custom in trade and by previous and subsequent course of dealings" treated the bill of lading as a negotiable bill and thereby created a bailment between the parties. In addition, appellant contests the trial court's finding that it converted American's property.

■ Where a trial court's findings involve a mixed question of law and fact, we review the trial court's decision for an abuse of discretion. *See Saenz v. Saenz,* 756 S.W.2d 93, 95 (Tex.App.—San Antonio 1988, no writ). In applying this standard, we defer to the trial court's factual determinations if they are supported by the evidence, and review its legal determinations de novo. *Remington Arms Co. v. Luna,* 966 S.W.2d 641, 643 (Tex.App.—San Antonio 1998, pet. denied); *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 820 (Tex.App.—San Antonio 1996, no writ).

■ We consider first whether the facts established bailment. In common law, bailment exists where: (1) the delivery of personal property by one person to another is made in trust for a specific purpose; (2) acceptance of delivery is made; (3) an express or implied contract that the trust will be carried out; and (4) an understanding exists under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs. *Soto v. Sea-Road Intern., Inc.,* 942 S.W.2d 67, 72 (Tex.App.—Corpus Christi 1997, writ denied); *see Sanroc Company International v. Roadrunner Transportation, Inc.,* 596 S.W.2d 320, 322 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ).

■ It is uncontested that IFF is in the business of receiving shipments for the purpose of delivering them to their customers in Mexico. Michelle Erickson, American's credit manager, testified that the purpose in sending the shipment to

IFF was to have it forward the shipment to Tri–Sure. The non-negotiable bill of lading executed by American designated IFF as a consignee of the shipment. Given this evidence, IFF's purpose was to receive the plugs in trust for a specific purpose. Although conflicting evidence existed concerning whether the steel plugs arrived at IFF with proper documentation, it was not contested that the plugs were found in IFF's warehouse. Ramiro Ramirez, traffic supervisor for IFF, testified that once the proper documentation was faxed to IFF, a subsequent check of the warehouse revealed the missing shipment. DTS's documents, admitted at trial, included a signed shipping order which stated "12/1/94 Santiago." At the time the shipment was made, IFF employed Santiago Figueroa as a traffic clerk. Figueroa denied that the signature on the shipping order was his.

■ Based on this evidence, the trial court could have concluded IFF accepted the shipment. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *GXG, Inc. v. Texacal Oil and Gas*, 977 S.W.2d 403, 412 (Tex.App.—Corpus Christi 1998, pet. denied). The appellate court is not a fact finder and we do not pass upon the credibility of witnesses, nor do we substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Thrift v. Hubbard*, 974 S.W.2d 70, 71 (Tex.App.—San Antonio 1998, pet. denied). Therefore, we must uphold the trial court's findings, and hold that acceptance of the delivery was made by IFF.

■ We next consider whether an express or implied contract existed that American's shipment would be delivered, and whether there was an understanding under the terms of the contract that the shipment would be dealt with as directed by American. These are the specific issues which American contests. In making our determination, we recognize that a bailment contract can arise by implication of law if through proof of sufficient circumstances, the implied relationship of bailor and bailee is shown to rest upon a substantive foundation. *Soto*, 942 S.W.2d at 72.

■ The evidence at trial also demonstrated that the parties had dealt with one another on four prior occasions, and on two subsequent occasions on the shipment in question. Erickson testified all shipments were accompanied by similar documentation. The documentation included the shipping order, shipping invoice and a signed bill of lading. American presented evidence of documentation which had accompanied two prior shipments sent by American to IFF. Erickson testified that the necessary documentation accompanied each shipment, attached in a plastic pouch. Every shipment sent by American through IFF was intended for Tri–Sure, and with the exception of the shipment in question, all shipments were delivered to Tri–Sure. Evidence was also introduced which depicted the cartons eventually located by IFF in its warehouse. The exterior of the cartons stated "flanges," and noted Tri–Sure's name and address in Mexico. No evidence was introduced as to the industry practice or trade custom regarding the shipment of goods being sent by U.S. shippers across the border.

We agree with appellant's assertion that it was erroneous for the trial court to find bailment based on custom in the trade, as no evidence was introduced establishing trade custom. However, we do find that there was sufficient evidence to support the trial court's finding that bailment existed between American and IFF. The evidence concerning prior shipments, and acceptance of the shipment in question on December 1, 1994 amounted to an implied contract that American's trust would be carried out, and that IFF would adhere to American's conditions to deliver the goods to Tri–Sure. Clearly then, the failure of IFF to deliver the plugs to Tri–Sure

amounted to a breach of the bailment contract.

■■■■ Generally, a bailor maintains a number of choices regarding available relief for the breach of a bailment contract, including conversion. *Seale v. White*, 217 S.W.2d 38, 38 (Tex.Civ.App.—Dallas 1949, writ ref'd n.r.e.). In the present case, the trial court concluded, as a matter of law, that the failure to deliver the plugs to Tri–Sure amounted to conversion of the plugs. Conversion is any distinct act of dominion wrongfully exerted over another person's property in denial of, or inconsistent with, that other persons's right in property, either permanently or for an indefinite period of time. *Soto*, 942 S.W.2d at 72; *Dolenz v. National Bank of Texas at Fort Worth*, 649 S.W.2d 368, 370 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). In a claim for conversion, the plaintiff must prove that he or she was the owner of the property, had legal possession of it, or was entitled to possession. *Soto*, 942 S.W.2d at 72. The plaintiff does not have to possess title to the property to maintain ownership so long as it has the right to immediate possession. *See Soto*, 942 S.W.2d at 72 (citing *Christian v. First Nat'l Bank of Weatherford*, 531 S.W.2d at 832, 841 (Tex. Civ.App.—Fort Worth 1975, writ ref'd n.r.e.)). IFF argues that because title passed to Tri–Sure upon delivery to DTS, American no longer possessed title or the right to possession.

■■■ Because title revested in American upon Tri–Sure's refusal to accept delivery, American was the owner of the shipment in question. As such, it maintained the rights as the owner of the goods. Sufficient evidence was presented to show that the plugs were never delivered to Tri–Sure in accordance with American's directions. In the case of a non-negotiable document, a bailee must deliver goods to the person named according to the terms or pursuant to written instruc-

tions. *See* Tex. Bus. & Com.Code Ann. § 7.403(a),(d). (Vernon 1991). In the present case, a non-negotiable bill of lading was executed pursuant to the shipment of the goods in question. As a bailee, IFF was required to deliver the goods to Tri–Sure as it had been required to do in all shipments.[3] By breaching its duty as a bailee, in this regard, IFF exercised dominion and control over American's property in such a way that it was inconsistent with American's right to the property. *See Soto*, 942 S.W.2d at 74. We conclude that the trial court did not abuse its discretion, and overrule appellant's second and fourth issues.

## Alteration of Invoice

■■■ The trial court found that American did not alter the original invoice by re-billing the plugs to IFF. However, appellant asserts that this finding was erroneous because it is prohibited by law. *See* Tex. Bus. & Com.Code Ann. § 7.306 (Vernon 1991). Although they carry the same force and dignity of a jury's verdict, *Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex.App.—San Antonio 1995, writ denied), findings of fact, when filed with the reporter's record are not deemed conclusive. *Id; see Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). In a case tried to the bench, we review findings of fact by the same standard as applied when reviewing the legal and factual sufficiency of the evidence supporting a jury's findings. *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503(Tex.App.—Waco 1997, writ denied); *ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 121 (Tex. App.—El Paso 1996, no writ). Thus, we review findings of fact based on the legal and factual sufficiency of the evidence. *Id.*

We review a legal sufficiency issue by considering all the evidence in the light most favorable to the party in whose favor

---

**3.** We agree with appellant that the bill of lading did not specify Tri–Sure. However, the shipping invoice and the boxes which contained the plugs clearly denoted Tri–Sure as the party to receive delivery.

the verdict has been rendered and indulge every reasonable inference deducible from the evidence in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.* 964 S.W.2d 276, 285–86 (Tex.1998); *Formosa Plastic Corp. USA v. Presidio Eng'rs,* 960 S.W.2d 41, 48 (Tex.1998). We review a factual sufficiency issue by examining all the evidence, considering and weighing all the evidence in support of the findings and the evidence that controverts the findings. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989).

■ The evidence introduced regarding the billing of the plugs to IFF consisted of faxed memoranda sent to IFF by American after the shipment was located. Upon finding that Tri–Sure had rejected the plugs, American notified IFF on January 10, 1996, that it would be billing IFF for the value of the plugs. American specifically notified Santiago Figueroa about the new billing. Subsequent faxes were sent by American requesting payment on the new billing which matched the original bill sent to Tri–Sure. No other evidence was admitted concerning the new billing.

Appellant asserts that because American no longer held title to the goods, any attempt to re-bill amounted to an alteration of documentation under Texas law. We disagree. As noted above, we find that title revested in American upon Tri–Sure's rejection of the shipment. American maintained the power to bill for the value of the goods. In addition, there is nothing to suggest that alteration of a shipping document occurred. Section 7.306 specifically applies to the alteration of bills of lading, and prohibits the alteration of such documents, with or without fraudulent intent. *See also* TEX. BUS. & COM.CODE ANN. § 7.307 (Vernon 1991). Here, the document at issue was the billing invoice issued by American, not the bill of lading or shipping order. Thus, the factual circumstances presented in the present case preclude the application of section 7.306. TEX. BUS. & COM.CODE ANN. § 7.306 (Vernon 1991). We hold that the evidence was

legally and factually sufficient to uphold the trial court's finding that American did not alter the original invoice. We overrule appellant's fifth issue.

### Necessary Documentation

■ Appellant also challenges the trial court's finding that IFF had all the necessary documentation to transfer the goods. Although evidence was admitted that the shipment was received by IFF on December 1, 1994, the evidence was conflicting whether the shipment arrived with the proper documentation.

The IFF employee responsible for checking the documentation regarding the shipment for IFF did not testify at trial. Romero Ramirez, who was not present when the shipment was delivered, testified that IFF did not have the documentation. He speculated that IFF may have accepted the shipment based on IFF's previous practice of the accepting shipments and waiting for the documentation to arrive later. As stated above, evidence was also introduced that in the six other shipments made by American to IFF, the necessary documentation was attached to the shipment via a plastic pouch. All these shipments were destined for Tri–Sure in Mexico City. Moreover, there was no evidence to suggest that IFF refused to accept the shipment or complained about the lack of documentation at the time of delivery.

We find that the evidence is legally and factually sufficient to support the trial court's finding that IFF possessed the necessary documentation to accept the shipment. We overrule appellant's sixth issue.

### Whether Plugs Functioned for the Purpose Created

■ In its seventh issue, appellant asserts that the trial court erred in finding that the plugs no longer functioned for the purpose for which they were created. American contends that there was sufficient evidence in the record to support the trial court's findings.

The shipment in the present case consisted of steel plugs with rubber seals. They function to seal drums or barrels shut, and prevent leakage of the contents inside. IFF was informed by American that after a period of the time, the plugs would deteriorate and become unstable. It is undisputed that the plugs were found ten months after they were delivered. Moreover, no evidence was introduced by IFF contradicting American's assertions concerning the functionality of the plugs. Finding no factual evidence to support otherwise, we must hold that there was sufficient evidence to sustain the trial court's finding that the plugs were no longer functional. Thus, we overrule appellant's seventh issue.

### Damages

In its eighth and final issue, IFF challenges the trial court's finding that the plugs were valued at $20,620.00. This was the sales price agreed to be paid by Tri–Sure in November 1994. Appellant contests that this was a correct measure of damages because it failed to take into account the market value of the plugs.

We review an award of damages as a challenge based upon the sufficiency of the evidence, and will reverse an award of damages if it so against the great weight and preponderance of the evidence as to be manifestly unjust. *D.E.W., Inc. v. Depco Forms, Inc.*, 827 S.W.2d 379, 383 (Tex.App.—San Antonio 1992, no writ).

As noted above, IFF's failure to deliver the plugs constituted a conversion of the bailment. In a case of conversion, the amount of damages are determined at the time of the conversion together with the interest thereon. *Soto*, 942 S.W.2d at 74 (citing *Imperial Sugar Co. v. Torrans*, 604 S.W.2d 73, 74 (Tex. 1980)); *Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 586 (Tex.App.—San Antonio 1998, no pet.). Damages can also include compensation for actual losses or expenses which were a natural and proxi-

mate result of defendant's conversion. *Soto*, 942 S.W.2d at 74.

Evidence in the present case included the original invoice dated November 28, 1994, which billed Tri–Sure $20,620.00 for the plugs. The price included the value of the plugs and the freight cost of transporting the plugs from Illinois to Texas, $1,900.00. After Tri–Sure refused to accept the plugs, a second invoice, dated the same date and noting the same amount, was issued by American to IFF as the billed party. The only evidence supporting the value of the plugs included the invoices billing Tri–Sure and IFF. IFF presented no evidence to the contrary challenging American's value of the plugs. In addition, there is no evidence in the record that American did not bear the cost of shipping the plugs from Illinois to Texas. A review of the record reveals that this was sufficient evidence to support the trial court's finding of the damages. *See Soto*, 942 S.W.2d at 74. Therefore, we do not find that the award of damages was so against the overwhelming weight of the evidence so as to have been manifestly unjust and clearly wrong. *Id.* Rather, we conclude that the award of damages placed American in the same position it would have been in if the plugs had properly been delivered to Tri–Sure. *Id.* Accordingly, we hold that the evidence was factually sufficient to support the trial court's award of damages. We overrule appellant's eighth issue.

### Conclusion

For the reasons articulated above, we overrule all issues raised on appeal and affirm the judgment of the trial court.