

NUMBER 13-10-00694-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**MOHICAN OIL & GAS, LLC,**                        **Appellant,**

**v.**

**CHAPCO, INC. AND FROST NATIONAL BANK,**        **Appellees.**

**On appeal from the 319th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant Mohican Oil & Gas, LLC challenges the garnishment judgment entered in favor of appellee Chapco, Inc. By four issues, Mohican complains of the trial court's entry of judgment without a trial under Texas Rule of Civil Procedure 674, certain attorney's fees and costs awarded in the garnishment judgment, the evidence supporting the trial court's ruling on Mohican's motion to modify Chapco's writ, and the prematurity of

the judgment.   We affirm, in part, and reverse and render, in part.

## I. Background[1]

In the underlying breach of contract litigation between the parties, Chapco obtained a judgment against Mohican after a jury trial in June 2009.[2]   The judgment awarded Chapco $60,000 in damages, $6,657.53 in prejudgment interest, and $72,146.89 in attorney's fees and costs incurred during trial.   The judgment for Chapco totaled $138,804.42.[3]

In June 2010, Chapco filed an application for writ of garnishment against Mohican's operating account held by appellee and garnishee Frost National Bank.   *See* TEX. R. CIV. P. 658.   Chapco alleged that Mohican "does not possess property in Texas subject to execution sufficient to satisfy the judgment" and that Frost "has in its possession funds belonging to" Mohican.   Chapco prayed for a garnishment judgment in the amount of $138,763.32 plus post-judgment interest.

Mohican responded by filing a motion to modify the writ of garnishment under rule 664a.   *See* TEX. R. CIV. P. 664a (providing that a defendant whose property has been garnished "may seek to vacate, dissolve or modify the writ").   Mohican attached to its

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.   *See* TEX. R. APP. P. 47.4.

[2] This Court affirmed the trial court's judgment in favor of Chapco and against Mohican on January 27, 2011.   *See Mohican Oil & Gas, LLC v. Scorpion Exploration & Prod., Inc.*, 337 S.W.3d 310, 320-21, 325 (Tex. App.—Corpus Christi 2011, pet. filed).   In a cross-appeal arising out of the same trial but unrelated to Mohican's appellate claims against Chapco, Scorpion Exploration and Production Company challenged the prevailing party status of Mohican.   *See id.* at 321.   We partially sustained and partially overruled Scorpion's challenge, *see id.* at 324, and Scorpion has timely filed a petition for review with the supreme court.   Mohican did not file a petition for review with the Texas Supreme Court challenging our disposition of its appeal against Chapco within the deadline provided by the rules.   *See* TEX. R. APP. P. 53.7(a).

[3] The judgment also included contingent appellate legal fees of $15,000 for an appeal to the court of appeals and $10,000 for an appeal to the supreme court.

motion the affidavit of its accountant and a reconciled bank statement, which showed that the balance in its Frost operating account at the time the writ was filed was $148,307.56. In its motion, Mohican alleged that all but $15,426.68 of the funds in the account were funds "held for payment of expenses of [oil and gas] operations" or funds owed to "royalty or mineral interest owners." Mohican argued that these funds, "held for the account of third party non-operators" pursuant to a joint operating agreement (JOA), were not subject to garnishment. After an evidentiary hearing, the trial court denied Mohican's motion to modify. The trial court entered the following findings of fact regarding that hearing:

1. On June 6, 2009, after a trial by jury, this Court entered judgment on behalf of Chapco against [Mohican]. The judgment rendered by this Court against Mohican was in the amount of $60,000.00, trial attorneys fees of $72,146.89, appellate attorney fees of $15,000.00 and court costs (the Judgment).

2. Mohican has appealed the Judgment to the Court of Appeals, but has not attempted to supercede the Judgment in accordance with TRAP 24.

3. On June 24, 2010, Chapco filed a[n Application for] Writ of Garnishment against Frost National Bank.

4. On July 6, 2010, Mohican filed its Motion to Modify the Writ of Garnishment [obtained] by Chapco against Frost National Bank and intervened in the case.

5. Mohican demanded a hearing and a ruling on its Motion to Modify pursuant to TRCP 664(a) [sic].

6. The Court conducted an evidentiary hearing on July 13, 2010, on the Motion to Modify and a made a ruling on the Motion on July 16, 2010, after hearing witness testimony presented by Mohican.

7. Chapco proved the grounds relied upon for the issuance of the writ of garnishment by proving that it had a valid, subsisting judgment, and that within its knowledge, Mohican did not possess property in the

3

state subject to execution sufficient to satisfy the judgment.

8. Mohican contended in the Motion to Modify and argued during the hearing on the Motion to Modify that all amounts owed by Frost National Bank under Account No. [ending in 094] save and except for $15,426.68, was money belonging to parties other than Mohican.

9. Account No. [094] is an account held in the name of Mohican and pursuant to the account agreement, no other party other than Mohican appears on the account. Further, the authority to withdraw money from the account is limited to Marty Thering and John Newman, principals of Mohican.

10. Account No. [094] is a general account at Frost National Bank. The amount owed by Frost National Bank arising from the account is owed to Mohican and not to third parties.

11. The various third party claimants to the account as argued by Mohican are merely creditors of Mohican, as is Chapco. Being a creditor of Mohican confers no ownership rights to the account or to the amount owed to Mohican by Frost National Bank. Furthermore, Mohican failed to adequately trace the money allegedly owned by these third parties to establish their alleged ownership.

The trial court also filed the following conclusions of law:

1. Mohican filed its Motion to Modify the Writ of Garnishment pursuant to TRCP 664(a) [sic]. TRCP 664(a) [sic] requires the Court to conduct a hearing and rule on the Motion to Modify within ten (10) days after the Motion is filed.

2. TRCP 664(a) [sic] provides that a defendant whose property or account has been garnished may, by sworn written motion, seek to vacate, dissolve or modify the writ of garnishment for any grounds or cause, extrinsic or intrinsic. TRCP 664(a) [sic].

3. Texas law divides bank deposits into "general deposits" and "special deposits." *Brady [sic] v. First State Bank, Overton, Texas*, 835 S.W.2d 609, 618-19 (Tex. 1992); *Hudnall v. Tyler Bank and Trust Company*, 458 S.W.2d 183, 186 (Tex. 1970). Ordinarily, a general deposit of money with a bank creates a creditor-debtor relationship between the depositor and the bank. Title to the money passes to the bank, subject to the depositor's demand for payment. *Brady [sic] v. First State Bank, Overton, Texas, supra* at 618-19, n.4. The account held in the name of Mohican created a debtor creditor

4

relationship with Frost, whereby Frost owed money to Mohican, but not to third parties.

4.      Based on the evidence presented and arguments of the parties, the Court refuses to modify the writ of garnishment filed by Chapco as the evidence merely indicates a general account.  The monies in such account are those of Mohican and not any third party.

One day after the hearing on Mohican's motion to modify, Frost filed its answer stating that, as of the date of the answer, it was indebted to Mohican in the amount of $174,203.88.  In its answer, Frost prayed to recover "its reasonable and necessary attorney's fees in an amount of not less than $750.00."  Chapco filed a motion to enter judgment on Frost's answer.   In its motion, Chapco prayed for a judgment in the amount of $176,250.32, which represented "the amount . . . owed to Chapco based on the [underlying] judgment and the costs incurred in this proceeding."

Mohican responded to Chapco's motion to enter judgment and filed its answer under rule 673, traversing and controverting Frost's answer.   See TEX. R. CIV. P. 673.   In its answer, Mohican denied that Frost was indebted to Mohican in the amount specified, arguing again that the "funds in question were funds in which third parties have an equitable interest and of which they are the beneficial owners which interest is superior to Mohican's legal title as the account holder."   Mohican demanded a trial, under rule 674, on the issues presented in its answer.   See TEX. R. CIV. P. 674.

Without a hearing, the trial court entered judgment, ordering that Chapco recover the sum of $173,453.88 from Frost in satisfaction of the underlying judgment against Mohican.   The judgment also ordered that Frost recover its attorney's fees by withholding $750 from Mohican's funds in Frost's possession.

Mohican filed a motion to vacate, modify, correct or reform the judgment, arguing

in relevant part that: the amount awarded was wrong in that it exceeded the amount of the underlying judgment and recoverable fees and costs; the trial court violated rules 673 and 674 by entering judgment without holding a trial on Mohican's answer traversing Frost's answer, *see* TEX. R. CIV. P. 673, 674; and the trial court erred under rule 677 in ordering Mohican to pay Frost's attorney's fees without a trial on Mohican's answer. *See* TEX. R. CIV. P. 677. Mohican prayed that the trial court vacate its judgment and set the case for trial or, in the alternative, reform the judgment.

Chapco responded to Mohican's motion to vacate or reform by arguing that: Mohican was not entitled to a trial on its answer traversing Frost's answer as it raised no new grounds that were not already considered and ruled on at the evidentiary hearing on Mohican's rule 664a motion to modify; and the judgment properly entitled Frost to recover its attorney's fees from Mohican. In its response, Chapco admitted that the amount of the trial court's judgment was incorrect in that it included attorney's fees contingent on an unsuccessful appeal by Mohican to the Texas Supreme Court, a contingency which had not occurred. Chapco attached as an exhibit the amounts that it proposed for the modified judgment, which subtracted the supreme court appellate fees and totaled $167,852.53.[4]

In response to the foregoing motions by Mohican and Chapco, the trial court modified its initial judgment and entered judgment in the amount of $167,852.53. The

---

[4] Chapco's proposed modified judgment amount included the following items, totaling $167,852.53:

| | |
|---|---|
| Amount of Judgment: | $ 138,763.32 |
| Interest accrued in original proceeding to 9-29-10: | $ 8,858.04 |
| Costs in original proceeding: | $ 4,082.81 |
| Appellate attorneys fees with accrued interest: | $ 15,801.36 |
| Costs in garnishment proceeding: | $ 347.00 |

6

modified judgment ordered that Frost recover its attorney's fees from Mohican. On request by Mohican, the trial court filed findings of fact and conclusions of law. The findings of fact mirrored the findings from the earlier evidentiary hearing and added the following relevant findings:

6. On July 14, 2010, Frost National Bank filed its Answer to the Writ of Garnishment and admitted that . . . when the answer was filed, $174,203.88 was owed by Frost National Bank to Mohican. Frost's answer also [sought] $750.00 in attorneys' fees in answering the writ of garnishment.

7. On August 6, 2010, Chapco filed its Motion to Enter Judgment on the Writ of Garnishment pursuant to TRCP 668. Chapco's Motion to Enter Judgment indicated that it did not contest or traverse the answer of Frost.

8. On August 10, 2010, Mohican filed its answer and attempted to traverse the answer of Frost by raising the same issues it raised in the Motion to Modify the Writ of Garnishment. The Court finds that such issues have been previously ruled up by [the trial court] in the Rule 664(a) [sic] hearing.

9. This Court . . . entered judgment on the writ of garnishment on September 13, 2010, in the amount of $173,453.88. Mohican did not object to Frost National Bank's request for $750.00 in attorneys' fees.

10. On September 23, 2010, Mohican filed its Motion to Vacate, Modify, Correct or Reform Judgment . . . . After hearing the arguments of counsel thereon, the Court modified the September 13, 2010[] Judgment by entering a Modified Judgment on September 29, 2010.

11. The Court finds that the amount of $167,852.53 is owed to Chapco by Mohican which amount consists of the following:

| | |
|---|---|
| Amount of Judgment: | $ 138,763.32 |
| Interest accrued in original proceeding to 9-29-10: | $ 8,858.04 |
| Costs in original proceeding: | $ 4,082.81 |
| Appellate attorneys fees with accrued interest: | $ 15,801.36 |
| Costs in garnishment proceeding: | $ 347.00 |
| | $ 167,852.53 |

7

12.	Based on the verified answer of Frost National Bank, the Court finds that Frost National Bank is indebted to Mohican in the amount of $174,203.88.

13.	The Court finds that $750.00 is a reasonable fee incurred by Frost National Bank in answering and responding to the Writ of Garnishment.

The trial court also entered the following conclusions of law:

1.	Chapco is entitled to Judgment against Frost National Bank pursuant to TRCP 668 as the answer of Frost National Bank establishes that it is indebted to Mohican in the amount of $174,203.88. TRCP 668 provides that the Court shall render Judgment for the Plaintiff against the garnishee for the amount so admitted or found to be due to the defendant from the Garnishee, unless such amount is in excess of the amount of the Plaintiff's judgment against the defendant with interest and costs, in which case, judgment shall be rendered against the garnishee for the full amount of the judgment already rendered against the defendant, together with interest and costs of the suit in the original case and also in the garnishment proceedings.

2.	For the purposes of the Writ of Garnishment, the Judgment is considered final pursuant to TRCP 657 even though the Judgment has been appealed by Mohican, as Mohican failed to supersede the judgment. *Wrigley v. First Nat. Sec. Corp.*, 104 S.W.3d 259, 264 (Tex. App.-Beaumont 2003, no pet.).

3.	The essential issue in a garnishment proceeding is whether the garnishee is indebted to or has in his possession property belonging to the judgment debtor. *Putman & Putman, Inc. v. Capitol Warehouse, Inc.*, 775 S.W.2d 460, 463 (Tex. App.-Austin 1989, writ denied). The only issue to be tried in a garnishment proceeding is "who is entitled to the funds involved in the proceeding." *Owen Elec. Supply v. Brite Day Constr. Inc.*, 821 S.W.2d 283, 286 (Tex. App.-Houston [1st Dist] 1991, writ denied).

4.	Based on the prior ruling on the Motion to Modify . . . , it is proper for this Court to enter Judgment under TRCP 668 as the indebtedness owed by Frost National Bank is owed to Mohican and not to third parties. *Ferrell v. First Nat. Bank of Bryan*, 576 S.W.2d 677 (Tex. Civ. App.-Waco 1979, no writ).

5.	In a garnishment proceeding, a garnishee who is discharged and is

8

> not a litigant, and is no more than a stakeholder in the writ of garnishment proceeding, is entitled to reasonable compensation in protecting his interest in the garnishment proceeding. *Hofmann Paint Mfg. Co. v. Paint Cottage, Inc.*, 473 S.W.2d 954, 957 (Tex. Civ. App. Austin 1971, no writ). When the answer of the garnishee has not been controverted and the garnishee is held liable based on the answer, such cost shall be taxed against the defendant. TRCP 677.

6. Frost National Bank is discharged of all liability to Mohican to the extent of the sums ordered are paid to Chapco.

Mohican then filed a motion to vacate or reform the modified judgment, arguing that: the garnishment was improper while the appeal of the underlying judgment was still pending; the trial court was required to hold a trial on Mohican's answer traversing Frost's answer and Mohican was not bound by the "interlocutory ruling" on its motion to modify; the amount of the judgment was erroneous; and the court erred in ordering Mohican to pay Frost's attorneys' fees. After a response by Chapco, the trial court denied Mohican's motion to vacate or reform. This appeal followed.

## II. Was the Garnishment Premature?

By its fourth issue, Mohican argues that entry of the garnishment judgment was premature because the appeal is still pending in the underlying breach of contract case. As posited by Mohican, it is true that a trial court cannot enter a final garnishment judgment until the judgment in the underlying suit is no longer subject to being set aside, reversed, or modified on appeal. *See Taylor v. Trans-Cont'l Props., Ltd.*, 670 S.W.2d 417, 419 (Tex. App.—Tyler 1984, orig. proceeding); *see also Thomas N. Heap, D.D.S., Inc. v. Val-Pak of Greater Houston*, No. 01-00-00756-CV, 2001 WL 699944, at *3 (Tex. App.—Houston [1st Dist.] June 21, 2001, pet. denied) (not designated for publication). Here, this Court affirmed the underlying judgment on the jury's verdict against Mohican on

9

Chapco's breach of contract claim before Mohican filed its brief in this appeal, *see Mohican Oil & Gas, LLC v. Scorpion Exploration & Prod., Inc.*, 337 S.W.3d 310, 320-21, 325 (Tex. App.—Corpus Christi 2011, pet. filed), and Mohican did not challenge our disposition of its appeal by filing a petition for review with the supreme court within the time period prescribed by the rules. *See* Tex. R. App. P. 53.7(a). As such, the underlying judgment in this case has reached a point where it is no longer subject to being reversed, and the garnishment judgment was not premature for this reason.[5] Moreover, even were we to assume without deciding that garnishment judgment was premature at the time it was entered, we conclude that Mohican's complaint about the timing of the garnishment judgment is moot given that Chapco's underlying judgment against Mohican is no longer subject to reversal and the controversy between the parties has therefore ceased to exist. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005) (holding that "a case becomes moot if a controversy ceases to exist" between the parties) (citing *Bd. of Adjustment of San Antonio v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002)). Mohican's fourth issue is overruled.

### III. Motion to Modify under Rule 664a

In its third issue, Mohican argues that insufficient evidence supported the trial court's denial of its rule 664a motion to modify. By this issue, Mohican challenges findings of fact 9, 10, and 11 and conclusions of law 3 and 4 entered by the trial court after the hearing on the motion to modify. Because we believe the challenged findings of fact actually involve mixed questions of law and fact, we review the challenged findings for an

---

[5] *See infra* Part V regarding the mootness of Mohican's challenge to appellate attorney's fees.

abuse of discretion. *See Int'l Freight Forwarding, Inc. v. Am. Flange*, 993 S.W.2d 262, 267 (Tex. App.—San Antonio 1999, no pet.). We defer to the court's factual determination, if supported by the evidence, and review the legal conclusions de novo. *Id.* "[T]he trial court abuses its discretion when it fails to properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions unsupported by the record." *Remington Arms Co. v. Luna*, 966 S.W.2d 641, 643 (Tex. App.—San Antonio 1998, pet. denied). We review the conclusions of law de novo. *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 727 (Tex. App.—Corpus Christi 2006, pet. denied). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Mack v. Landry*, 22 S.W.3d 524, 528 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Spiller v. Spiller*, 901 S.W.2d 553, 556 (Tex. App.—San Antonio 1995, writ denied).

Having reviewed the record of the rule 664a hearing, it appears undisputed that, at the time Chapco filed its writ, Mohican had written checks in the amount of approximately $132,000 from its Frost operating account to vendors, lessors, royalty interest owners, and working interest partners and that payment on those checks was outstanding.[6] In findings 9, 10, and 11, the trial court determined, in relevant part, that: the account in question was held in the name of Mohican, alone; only Mohican's principals could withdraw money from the account; the account is a "general account"; the money Frost holds in the account is owed to Mohican, not to third parties; the "third-party claimants" are "merely creditors of Mohican, as is Chapco"; these creditors have no ownership rights

---

[6] The evidence at the hearing showed that $123,000 of the $132,000 was owed to MOG Producing, L.P., one of Mohican's working interest owners. One of the limited partners in MOG Producing is John Newman, who is also a Mohican principal.

11

to the account; and Mohican did not adequately trace the money owed to these creditors to establish ownership of the funds.

Mohican argues that these findings and conclusions were erroneous because the recipients of the outstanding checks had an equitable and beneficial ownership interest in those funds, which were therefore not subject to garnishment. *See Sw. Bank & Trust Co. v. Calmark Asset Mgmt., Inc.*, 694 S.W.2d 199, 200 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) ("Neither trust funds nor the funds of another deposited by a defendant into an account in his own name is subject to garnishment by the defendant's creditors."); *see also RepublicBank Dallas v. Nat'l Bank of Daingerfield*, 705 S.W.2d 310, 311 (Tex. App.—Texarkana 1986, no writ) (holding that in garnishment cases, equitable title to the property the garnishing creditor seeks to reach prevails over bare legal title to the property). Specifically, Mohican argues that under its JOA with its third party non-operator working interest owners, Mohican was obligated to hold the funds of the third-party owners; for this reason, Mohican argues that certain funds in the Frost account were beneficially owned by the third-party owners and not subject to garnishment.

However, having reviewed the applicable portion of the JOA on which Mohican relies, we disagree that it applies to summarily block the garnishment, as Mohican posits. The entire provision, which is contained in the "Rights and Duties of Operator" section of the JOA and is titled "Custody of Funds," is as follows:

> Operator shall hold for the account of Non-Operators any funds of the Non-Operators advanced or paid to the Operator, either for the conduct of operations hereunder or as a result of the sale of production from the Contract Area, and such funds shall remain the funds of the Non-Operators on whose account they are advanced or paid until used for their intended purpose or otherwise delivered to the Non-Operators or applied toward the payment of debts . . . . Nothing in this paragraph shall be construed to

12

> establish a fiduciary relationship between Operator and Non-Operator for any purpose other than to account for Non-Operator funds as herein specifically provided. Nothing in this paragraph shall require maintenance by Operator of separate accounts for the funds of Non-Operators unless the parties specifically agree.

At the most, this provision protects funds "advanced or paid" to Mohican by its partners, the third-party non-operator working interest owners under the JOA. It is undisputed that money advanced by Mohican's working interest owners is initially held in Mohican's escrow account but is then transferred to the operating account to pay drilling and operational costs. It is also undisputed that revenue from all of Mohican's oil and gas operations are deposited into the operating account. From the operating account, Mohican's working interest owners then receive their allotted portion of the revenues minus their portion of the drilling and other operating costs.

Assuming without deciding that the above provision does create a sort of special account not subject to garnishment, *see Calmark*, 694 S.W.2d at 200 (noting that it is a defense to garnishment if the funds sought to be garnished are funds being held in trust by the debtor for another party), it does so only for those funds advanced by Mohican's partners. In this regard, the trial court found that Mohican did not adequately trace ownership of the funds in the operating account. Because we conclude this finding was supported by the evidence, we defer to the trial court. *See Int'l Freight Forwarding, Inc.*, 993 S.W.2d at 267.

At the hearing, John Newman, one of the principals of Mohican, testified that the revenues from all of the oil and gas leases Mohican operates are commingled into its one operating account at Frost. Newman also testified that Mohican pays royalties, vendors, taxes, working interest partners, permits, fees, and surface damages out of this one

13

operating account. Tricia Guerra, Mohican's contract oil and gas accountant, confirmed that all revenues from the leaseholds operated by Mohican come into the one operating account. However, based on the bank reconciliation statement admitted at the hearing, Guerra could not identify which funds were coming in from which leaseholds. Guerra testified that at the time the writ of garnishment was served, all but $15,426.68 of the funds in the operating account were owed in outstanding checks to various third parties. But in her testimony, Guerra could not link the checks to specific leaseholds. Neither could she identify with certainty the nature of the payees; in other words, she could not say for certain whether the checks were written to vendors, royalty owners, or working interest owners. Crucially, there was no evidence presented at the hearing identifying specific, traced funds in the operating account that originated in funds advanced by Mohican's working interest owners, which are arguably the only funds protected by the "Custody of Funds" JOA provision.

Mohican also argues that Chapco failed to carry its burden at the hearing. Mohican argues that Chapco was required "to prove that Frost was actually indebted to Mohican in the amount requested" in the writ of garnishment and that Chapco failed to do so. Mohican misstates the parties' burdens at a rule 664a hearing. To avoid a rule 664a motion to dissolve or modify, the garnishor need only prove the grounds relied upon for the writ, i.e., whether it has a valid, subsisting judgment and, within its knowledge, the judgment debtor does not possess property in Texas subject to execution sufficient to satisfy the judgment. *See Exterior Bldg. Supply, Inc. v. Bank of Am., N.A.*, 270 S.W.3d 769, 771 (Tex. App.—Dallas 2008, no pet.); *see also* TEX. R. CIV. P. 664a ("The writ shall be dissolved unless, at such hearing, the [garnishor] shall prove the grounds relied upon

14

for its issuance . . . ."). "Apart from proof of the grounds supporting issuance of the writ, the party moving to dissolve the writ bears the burden to prove the ground for dissolution." *Walnut Equip. Leasing Co. v. J–V Dirt & Loam*, 907 S.W.2d 912, 915 (Tex. App.—Austin 1995, writ denied). Specifically, the garnishor does not have to prove that the garnishee is indebted to the defendant debtor. *Swiderski v. Victoria Bank & Trust Co.*, 706 S.W.2d 676, 678 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.).

Regardless, as previously discussed, Chapco did produce evidence refuting Mohican's claim that the funds in the operating account were beneficially owned by third parties. Through its examination of witnesses, Chapco showed that the funds in the account were not traced to those funds advanced by Mohican's partners. Chapco showed that the account in question is Mohican's general operating account into which all revenues are deposited and from which Mohican pays not only working interest owners and royalty but also vendors and other creditors. From the account statements admitted at the hearing, Mohican's accountant could not trace which funds were coming in from which wells. Neither could she pinpoint the nature of the outstanding checks, i.e., whether the checks were written to vendors, working interest owners, or royalty owners. Finally, Chapco admitted into evidence account documents showing that Mohican was the only party on the operating account and that only Mohican's principals had authority to withdraw money from the account. *See Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.*, 824 S.W.2d 557, 558 (Tex. 1992) ("Funds placed with a bank ordinarily become general deposits which create a debtor-creditor relationship between the bank and its depositor."). In sum, there was evidence to support the trial court's findings and conclusions that the money in the operating account was owed by Frost to Mohican and

not to third-parties and was therefore subject to garnishment.

Mohican's third issue is overruled.

## IV.   Was Mohican Entitled to a Trial Under Rule 674?

By its first issue, Mohican argues that the trial court erred in refusing to hold a trial after Mohican traversed Frost's answer under rule 673.   *See* TEX. R. CIV. P. 673 ("The defendant [debtor] may also, [by stating that it has good reason to believe and does believe that the the garnishee's answer is incorrect], controvert the answer of the garnishee.").   Rule 674 provides:  "If a garnishee whose answer is controverted, is a resident of the county in which the proceeding is pending, an issue shall be formed under the direction of the court and tried as in other cases."   TEX. R. CIV. P. 674.   It is undisputed that the garnishee, Frost, is a resident of the county where Chapco's application was filed and that Mohican controverted Frost's answer.   The question then becomes whether Mohican was entitled to a trial under rule 674 on the identical issue it raised in its motion to modify and litigated in an evidentiary hearing on that motion.   We conclude that it was not.

Mohican cites the applicable garnishment rules and one case from this Court, *Swiderski v. Victoria Bank and Trust*, 706 S.W.2d at 678.   Like that of Mohican, our research has yielded similarly sparse results.   We have found little to no legal authority on point for the circumstance presented in this case—where a substantive evidentiary hearing is held on the defendant debtor's rule 664a motion and, at which, the garnishee's indebtedness to the debtor is litigated by the parties.

As noted by Mohican, this Court stated in *Swiderski* that "[a] Rule 664a hearing is a distinct proceeding from the writ of garnishment proceeding between the garnishor and

16

garnishee." *Id.* We further noted that "[t]he issue to be determined in a Rule 664a hearing is [whether] the plaintiff [judgment creditor] . . . prove[d] the grounds relied upon for its (the writ of garnishment's) issuance" and not whether the plaintiff proved that the garnishee bank is indebted to the defendant debtor; the defendant does not carry the latter burden at a rule 664a hearing. *Id.*

Yet, at the rule 664a hearing in this case, whether Chapco had proved the grounds relied upon for its writ—i.e., whether it had a valid, subsisting judgment and made an affidavit stating that, within its knowledge, Mohican did not possess property in Texas subject to execution sufficient to satisfy the judgment—was not at issue. Rather, at the hearing, the substantive issue of Frost's indebtedness to Mohican was litigated. Mohican presented evidence at the hearing in support of its theory that all but approximately $15,000 of the funds in its operating account was beneficially owned by third parties and, thus, Frost was not indebted to Mohican in the amount prayed for in Chapco's writ. Chapco presented evidence and argument in rebuttal to support its theory that Mohican was the owner of the funds in the Frost operating account. In other words, we believe that what was procedurally conducted as a rule 664a hearing was in actuality an evidentiary hearing that amounted to the garnishor-garnishee proceeding we contemplated by our statement in *Swiderski*. *See id.* Both parties had the opportunity to present evidence and argument—in short, a trial was held on Mohican's third-party ownership issue. That Mohican later raised the identical issue in its rule 673 answer controverting Frost's answer did not trigger a do-over of the substantive proceeding already afforded to the parties. We are not persuaded by Mohican's argument that "strict compliance" with the applicable garnishment rules required the trial court to hold what

17

would have essentially been a second trial in this case. To conclude otherwise would exalt form over substance in a case where the parties were given the opportunity to present their evidence and argument to the trial court, as contemplated by the rules. The trial court did not err in refusing to hold an additional trial for this reason.

Mohican further argues, in relevant part, that it was entitled to a rule 674 trial because Frost had not yet filed its answer at the time of the rule 664a hearing and "Mohican could not know how the Bank would answer the lawsuit." Mohican argues that because the amount referred to in Frost's answer ($174,203.88) was greater than the amount litigated at the hearing ($148,307.56), "Mohican had to have the opportunity to traverse the Bank's 'incorrect' answer because Mohican was 'not satisfied' with it" and form issues that required trial. *See* TEX. R. CIV. P. 673, 674. In its controverting answer, however, the only issue formed by Mohican was whether the amount of indebtedness claimed by Frost in its answer was actually beneficially owned by third parties. In other words, Mohican was "not satisfied" by Frost's answer for the identical reason proffered in its motion to modify and fully litigated in the earlier evidentiary hearing. To the extent Frost's answer involved a greater dollar amount than the amount litigated at the hearing, we note that Mohican and Chapco engaged in extensive motion practice after the initial judgment was entered, in which the exact amount of the garnishment judgment was discussed and eventually modified to reflect the amount of the underlying judgment. Mohican's rule 673 answer—the answer that would have formed the issues for a rule 674 trial—did not raise any arguments regarding a discrepancy between the underlying judgment and the amount of indebtedness alleged by Frost in its answer. That issue was litigated by the parties in their motion practice on Chapco's motion to enter judgment and

18

the responses that followed. Thus, based on the foregoing, we again cannot conclude the trial court erred in refusing to hold a rule 674 trial on Mohican's rule 673 answer.

In sum, having already determined in our disposition of Mohican's third issue that the evidence and law supported the trial court's findings and conclusions regarding Mohican's third-party ownership issue, we conclude that there was no error when the trial court declined to hold a second trial on the same issue. Mohican's first issue is overruled.

## V. Attorney's Fees and Costs in the Judgment

By its second issue, Mohican complains of certain fees and costs awarded to Chapco in the garnishment judgment.

First, Mohican argues that the trial court erred in including appellate attorney's fees in the amount of $15,801.36. That amount represented the attorney's fees awarded in the underlying judgment contingent on an unsuccessful appeal by Mohican to the court of appeals. Mohican claims that when the garnishment judgment was entered in September 2010, the appeal of the underlying judgment was still pending. This is true. However, as discussed previously, this Court handed down its opinion in the underlying appeal in January 2011, affirming the verdict in favor of Chapco and overruling Mohican's appellate issues against Chapco. Thus, when Mohican filed its brief in this garnishment appeal on April 13, 2011, we had already disposed of the appeal. And as discussed previously, Mohican did not file a petition for review with the Texas Supreme Court contesting our disposition of its appeal against Chapco. Because Mohican was unsuccessful in prosecuting its appeal in this Court, the fees awarded in the judgment are no longer contingent; Chapco is entitled to the fees enumerated in the underlying

19

judgment. Mohican's argument challenging the award of appellate attorney's fees is therefore moot, and the garnishment judgment is not erroneous in this regard. *See Allstate Ins. Co.*, 159 S.W.3d at 642 (citation omitted).

Second, Mohican argues that there was no evidentiary basis to support the award of $4,082.81 in court costs from the underlying proceeding being included in the garnishment judgment. As a general rule, the successful party to a suit shall recover of its adversary all costs incurred in the suit. TEX. R. CIV. P. 131. The allocation of costs is within the trial court's discretion and, absent an abuse of discretion, cannot be overturned on appeal. *Labor v. Warren*, 268 S.W.3d 273, 278 (Tex. App.—Amarillo 2008, no pet.) (citing *Madison v. Williamson*, 241 S.W.3d 145, 157 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)). Section 31.007(a) of the Texas Civil Practice and Remedies Code prescribes that:

> Each party to a suit shall be responsible for accurately recording all costs and fees incurred during the course of a lawsuit, if the judgment is to provide for the adjudication of such costs. If the judgment provides that costs are to be borne by the party by whom such costs were incurred, it shall not be necessary for any of the parties to present a record of court costs to the court in connection with the entry of a judgment.

TEX. CIV. PRAC. & REM. CODE ANN. § 31.007(a) (West 2008). "Although somewhat vague as to procedure," section 31.007(a) "clearly does not require a formal presentation of evidence of a party's costs during trial." *Varner v. Howe*, 860 S.W.2d 458, 466 (Tex. App.—El Paso 1993, no writ). "All that seems to be required is that the successful party present . . . an itemized list of costs and fees incurred during the lawsuit." *Id.*; *see Labor*, 268 S.W.3d at 279.

Here, Chapco asserts in its brief that "the amount of costs was explained to the trial

20

court who had the authority to grant the recovery of costs." We accept this assertion of fact as true because Mohican does not contradict it. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true facts stated unless another party contradicts them."). Because the trial court was provided an explanation regarding the amount of court costs in the underlying case, we cannot say the court abused its discretion in including those costs in the garnishment judgment. *See Labor*, 268 S.W.3d at 278-79; *Varner*, 860 S.W.2d at 466.

Third, Mohican argues that the trial court erred by including in the garnishment judgment the $347.00 in costs for the garnishment proceedings. Mohican cites rule 677, which provides: "where the answer of the garnishee has not been controverted . . . , such costs shall be taxed against the defendant; where the answer is contested, the costs shall abide the issue of such contest." TEX. R. CIV. P. 677. Mohican argues that because there was no trial of the issues formed, no prevailing party was determined and no costs could be assessed. For the same reasons enumerated above in our disposition of Mohican's first issue, we are not persuaded. The trial court was not required to hold the trial Mohican is referring to in this argument because no issues were formed by Mohican's controverting answer other than those already litigated in the earlier evidentiary hearing. And Chapco prevailed in that contest, proving that the funds in the Frost operating account were owned by Mohican. Moreover, because Mohican did not controvert Frost's answer on any ground other than the third-party ownership issue which was already disposed of, Mohican's answer was effectively no controversion under rule 677, which then allowed the costs to be taxed against Mohican, the defendant. *See id.* For these reasons, the trial court did not err in assessing costs from the garnishment

21

proceeding against Mohican.

Finally, Mohican argues that it was improperly ordered to pay $750 in attorney's fees to Frost. Again, Mohican cites rule 677 and part of its argument centers on the trial court's decision not to hold a rule 674 trial. Because it controverted Frost's answer, Mohican argues that reasonable compensation to Frost, the garnishee, should have "abide[d] the issue of such contest." *See id.* However, again, for the same reasons provided in the foregoing paragraph, we are not persuaded that Mohican was entitled to a trial on the issue presented in its controverting answer.

Rather, as Mohican further argues, the trial court erred in awarding Frost's attorney's fees because there is no evidence in the record supporting the amount of fees awarded and Mohican did not stipulate to the amount. In its findings, the trial court stated that "$750.00 is a reasonable fee incurred by Frost National Bank in answering and responding to the Writ of Garnishment."[7] This Court has held that the "reasonableness of attorney's fees is a question of fact and must be supported by competent evidence. . . . A court does not have authority to adjudicate the reasonableness of attorney's fees on judicial knowledge without the benefit of evidence." *Bullock v. Foster Cathead Co.*, 631 S.W.2d 208, 212 (Tex. App.—Corpus Christi 1982, no writ) (citing *Great Am. Reserve Ins. Co. v. Britton*, 406 S.W.2d 901, 907 (Tex. 1966); *Redisco, Inc. v. Laredo Mopac Employees Credit Union*, 516 S.W.2d 197, 199 (Tex. Civ. App.—San Antonio 1974, no writ)). We find no evidence in the record regarding the reasonableness of Frost's

---

[7] The trial court also found that "Mohican did not object to Frost National Bank's request for $750.00 in attorney's fees." This finding is not supported by the record. In its motion to vacate, modify, correct, or reform the judgment—which preceded the modified judgment that is the subject of this appeal—Mohican objected to the award of attorneys' fees to Frost. Mohican did not waive the argument, as suggested by the trial court's finding.

22

attorney's fees. Such evidence was required, and the trial court erred in determining that $750 was a reasonable amount of fees without such evidence.

We overrule Mohican's second issue to the extent it complains of the appellate attorney's fees and court costs awarded in the garnishment judgment. We sustain Mohican's second issue to the extent it challenges the assessment of Frost's attorney's fees against Mohican as no evidence was presented to the trial court supporting the reasonableness of that award.

## VI. Conclusion

We reverse the portion of the garnishment judgment ordering Mohican to pay Frost's attorney's fees and render judgment that Frost take nothing by its plea for fees. We affirm the remainder of the garnishment judgment.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 1st
day of December, 2011.

23